HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANE DOE (S.B.C.), | Case No. 2:24-cv-01985-RAJ |
| Plaintiff, | ORDER |
| v. | |
| SIX CONTINENTS HOTELS, INC.; HOLIDAY HOSPITALITY FRANCHISING, LLC; and CASCADE HOSPITALITY LLC, | |
| Defendants. | |

## I.   INTRODUCTION

THIS MATTER comes before the Court on Defendants Holiday Hospitality Franchising, LLC and Six Continents Hotels, Inc.'s (the "Franchisor Defendants") motion to dismiss, dkt # 21. Defendant Cascade Hospitality, LLC (the "Franchisee Defendant") filed a joinder to the motion. Dkt. # 26. The Court has reviewed the motion, the submissions in support of and in opposition to the motion, and the balance of the record. The Franchisor Defendants requested oral argument, but the Court finds oral

argument unnecessary to resolve the pending motion. For the reasons set forth below, the Court **GRANTS** the Franchisor Defendants' motion to dismiss.

## II. BACKGROUND

The Franchisor Defendants are franchisors of IHG branded hotels, including the Holiday Inn in SeaTac, Washington (the "Hotel"). *See* Dkt. # 1 ¶ 14. The Franchisee Defendant owns and operates the Hotel. *See id.* ¶¶ 15, 70. Plaintiff S.B.C. alleges she is a survivor of sex trafficking, and that from December 2013 through December 2014, she was repeatedly forced by her trafficker to engage in commercial sex at the Hotel. *Id.* ¶ 19.

Plaintiff alleges that Defendants are aware of the pervasive problem of sex trafficking in the hotel industry in general, at IHG branded hotels, and at the Hotel. *Id.* ¶¶ 28–62. Specifically, Plaintiff alleges it is well known that "hotels are the primary place where [sex trafficking] happens," and that agencies and non-profits "have devoted significant efforts to educating the hotel industry, including Defendants, on best practices for identifying and responding to sex trafficking." *Id.* ¶¶ 29–30. These best practices include spotting "red flags" of trafficking, such as signs of physical abuse, being subject to verbal threats, signs of malnourishment, and being constantly monitored. *Id.* ¶ 32. In addition, Plaintiff alleges Defendants are aware of trafficking at IHG branded hotels and the Hotel specifically. Plaintiff cites to examples of news stories reporting on sex trafficking at IHG branded hotels in other locations. *Id.* ¶ 49. She also cites two online reviews, from 2015 and 2016, describing "prostitutes" and a husband meeting "with his whore" at the Hotel. *Id.* ¶ 55.

Plaintiff further alleges that while she was trafficked at the Hotel, Hotel staff witnessed many "red flags" of trafficking. In particular, she alleges: Plaintiff used her ID or her trafficker's ID to rent rooms; the rooms were paid for with cash; front desk

employees made comments like "how much?" and called her "legs"; Plaintiff used "Do Not Disturb" signs to prevent housekeeping staff from entering the room; she constantly asked for fresh towels and sheets; her trafficker lingered around the hotel or in the parking lot while Plaintiff was with a "john"; Plaintiff dressed in provocative clothing; she sometimes walked "johns" past the hotel front desk to the room; and many men came in and out of the hotel room at unusual hours and only for brief periods. *Id.* ¶ 63. Plaintiff alleges that despite knowing or being willfully blind to her trafficking, Defendants continued to rent rooms and provide services to facilitate her sexual exploitation. *Id.* ¶¶ 72–74, 81.

As a result, Plaintiff asserts claims for (1) beneficiary liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), against all Defendants; and (2) vicarious liability for TVPRA violations against the Franchisor Defendants. *Id.* ¶¶ 117–127.

### III.    LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must point to factual allegations in the complaint that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In analyzing a motion to dismiss, courts assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). However, it "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV.  DISCUSSION

### A.  Beneficiary Liability

In 2000, Congress enacted the Trafficking Victims Protection Act to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1164 (9th Cir. 2022) (quoting *Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th Cir. 2011)). In 2008, Congress amended the TVPRA to allow victims to bring civil claims against individuals and entities that did not directly traffic the victim, but were "beneficiaries" of the trafficking. *Id.*  The statute states:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(5). A plaintiff states a claim for beneficiary liability under the TVPRA if the defendants (1) knowingly benefitted; (2) from participation in a venture; (3) which they knew or should have known was engaged in conduct that violated the TVPRA. *Ratha*, 35 F.4th at 1175.

Defendants argue Plaintiff fails to allege they participated in a venture, or that they knew or should have known that the venture violated the TVPRA.  For the reasons discussed below, the Court agrees.

### 1.  Knowledge

To establish TVPRA beneficiary liability, a plaintiff must plead the defendants "knew or should have known" they participated in a venture that "engaged in an act in

violation of [the TVPRA]." 18 U.S.C. § 1595(a). The Ninth Circuit in *Ratha* assumed the TVPRA's "knew or should have known" requirement implies a negligence standard. 35 F.4th at 1177. Negligence is "a less culpable mental state than actual knowledge . . . or recklessness." *Id.* (quoting *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019)). To satisfy this knowledge requirement, "a plaintiff may not rely solely on general allegations that a defendant was aware of sex trafficking to establish actual or constructive knowledge of specific instances of sex trafficking." *A.B. v. Extended Stay Am. Inc.*, No. 22-cv-5939, 2023 WL 5951390, at *5 (W.D. Wash. Sept. 13, 2023) (citing *Ratha*, 35 F.4th at 1177). "Rather, a plaintiff must plead facts establishing that a defendant knew or should have known that the plaintiff was being trafficked or regarding a specific trafficking enterprise." *Id.* The TVPRA prohibits, among other things, causing victims to "engage in a commercial sex act" by "means of force, threats of force, fraud, coercion . . . or any combination of such means." 18 U.S.C. § 1591(a).

In *Ratha*, the Ninth Circuit addressed TVPRA beneficiary liability in the context of a defendant company doing business with Thai companies engaged in trafficking and forced labor at shrimp factories. 35 F.4th at 1165–66. The Ninth Circuit affirmed summary judgment for the defendant because plaintiffs' evidence suggested "at most, that [defendant] should have known of labor abuses in the Thai shrimp industry *generally*." *Id.* at 1177 (emphasis in original). The court noted that "[s]weeping generalities about the Thai shrimp industry are too attenuated to support an inference that [defendant] knew or should have known of the specifically alleged TVPRA violations at the [factory where plaintiffs were trafficked]" in the relevant timeframe. *Id.*

In addition, three courts in this district have addressed TVPRA beneficiary liability in the context sex trafficking at hotels. In *A.B.*, Judge Estudillo dismissed a plaintiff's TVPRA claim because she failed to allege the hotel defendant knew or should

ORDER - 5

have known she was being trafficked. 2023 WL 5951390, at *5–7. The plaintiff alleged facts including that after her trafficker checked into the hotel, she "would then walk by herself through the lobby" to the room; she wore inappropriate clothing; "buyers" would enter the lobby of the hotel and go to the room; "[a]fter each encounter, [p]laintiff's trafficker would come to her room to collect the money paid to her"; and there were "bottles of lubricants, boxes of condoms, used condoms in the trash, [and] excessive requests for towels and linens." *Id.*, at *6. Judge Estudillo found these allegations were insufficient to show defendants knew or should have known of a *violation of the TVPRA*, which specifically prohibits commercial sex acts *by "means of force, threats of force, fraud, coercion . . . . . . or any combination of such means" Id.*; 18 U.S.C. § 1591 (emphasis added). Lacking was any "non-conclusory allegations of coercion or force such that hotel staff, or by extension [defendant], should have known that [p]laintiff was being trafficked." *A.B.*, 2023 WL 5951390, at *6.

In contrast, in *Doe (S.A.S.) v. ESA P Portfolio LLC*, No. 23-cv-6038, 2024 WL 3276417 (W.D. Wash. July 2, 2024), Judge Cartwright found plaintiff sufficiently alleged the hotel defendant's knowledge to support a TVPRA beneficiary liability claim. In that case, the plaintiff's allegations included that she "would constantly be guarded or escorted by her trafficker or one of his associates who would be assigned to sit outside her room"; her trafficker and his associates would linger around the common areas of the hotel while she was seeing "johns"; her trafficker used the "publicly viewable computer in the hotel business center" to post ads for plaintiff; hotel guests could hear yelling from plaintiff's room; the trafficker maintained relationships with hotel staff and management; and "one manager even 'exchang[ed] free rooms for [plaintiff's] services.'" *Id.*, at *8. Judge Cartwright found these "red flags" and the "control that [plaintiff's] traffickers allegedly showed over her while at the hotel" provided the defendant with at least

constructive knowledge of trafficking. *Id.* The court contrasted these allegations with those in *A.B.*, where the plaintiff "did not check in to the hotel with her trafficker" and instead walked "*by herself* through the lobby" to the room. *Id.* (emphasis in original).

Finally, in *R.T. v. RRI West Mgmt. LLC*, No. 24-cv-590, 2025 WL 961531 (W.D. Wash. Mar. 31, 2025), Judge Whitehead also found the plaintiff sufficiently alleged TVPRA beneficiary liability. There, plaintiff's allegations included that "traffickers directly interacted with hotel employees and paid them to act as lookouts or informants"; plaintiff and other trafficking victims "walked around the hotel grounds impaired by drugs or alcohol, lack of sleep and basic hygiene 'with bruises, and malnourished and in sexually explicit clothing'"; and "[p]erhaps most significantly," plaintiff presented a text message from her trafficker indicating he knew hotel employees "who saw [plaintiff] with a black eye and chose not to intervene despite the likely sex trafficking." *Id.*, at *4. This was enough to allege constructive knowledge. *Id.*

Here, the allegations in the complaint are closer to those in *Ratha* and *A.B.*, which were insufficient to plead the knowledge requirement. Like in *Ratha*, awareness of sex trafficking in the hotel industry generally or even at other IHG branded hotels are insufficient to satisfy the knowledge requirement. Moreover, the Court does not find the complaint contains factually supported allegations of sex trafficking at the Hotel specifically during the relevant period. Plaintiff cites two online reviews that complain about "prostitutes" and a husband meeting "with his whore" at the Hotel. Dkt. # 1 ¶ 55. These reviews do not relate to *trafficking* at the Hotel, as opposed to commercial sex activity or cheating. They were also posted in 2015 and 2016, after the time Plaintiff was allegedly trafficked at the hotel. *Id.* ¶¶ 19, 55.[1]

---

[1] Because the Court does not find Plaintiff plausibly alleges knowledge of sex trafficking at the Hotel, it does not reach the issue of whether allegations specific to the Hotel but

In addition, like in *A.B.*, Plaintiff's "red flag" allegations at most support an inference that Hotel staff were aware Plaintiff was engaging in commercial sex, but not that she was a victim of sex trafficking and subject to force, threats of force, fraud, or coercion. Plaintiff's allegations bear many similarities to those in *A.B.*, including that *Plaintiff* (not her trafficker) rented the rooms and walked "johns" to the hotel room, she dressed in provocative clothing, and constantly asked for fresh towels and sheets. Dkt. # 1 ¶ 63. While Plaintiff's allegation that her trafficker "linger[ed] around the hotel or in the parking lot" while she was with a "john" suggests some degree of control, this allegation on its own is not materially different from the allegation in *A.B.* that "[a]fter each encounter, [p]laintiff's trafficker would come to her room to collect the money paid to her." *Id.*; *A.B.*, 2023 WL 5951390, at *6. Plaintiff's allegations do not rise to the level of those in *S.A.S.* and *R.T.*, including, for example, visible signs of abuse and deterioration, yelling or signs of distress coming from the hotel room, established relationships between hotel staff and the trafficker, and hotel staff going so far as being "lookouts" for the trafficker or becoming a customer of the plaintiff. *See S.A.S.*, 2024 WL 3276417, at *8; *R.T.*, 2025 WL 961531, at *4.

Plaintiff cites district court cases from other circuits finding plaintiffs plausibly alleged hotel defendants' knowledge based, at least in part, on knowledge of sex trafficking in the hotel industry generally. Dkt. # 24 at 18. These cases are of course not binding. More important, they do not materially change the analysis here because they

---

unrelated to Plaintiff or her trafficker could be sufficient to plead the knowledge requirement. In addition, the Court does not reach the question of whether it is necessary to plead knowledge of the victim herself, or only of the "venture" at issue. *See* Dkt. # 25 at 8. In *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023), the Seventh Circuit noted that in cases involving "the trafficking of only one victim," "knowledge of the specific victim goes hand-in-glove with knowledge of the 'venture.'" *Id.* at 557. Here too, the two concepts collapse into one.

ORDER - 8

stand for the proposition that general knowledge of sex trafficking *combined with* signs of the plaintiffs' own trafficking support an inference of the hotel's knowledge. *See G.M. v. Choice Hotels Int'l, Inc.*, No. 22-cv-3788, 2024 WL 1347722, at *8 (S.D. Ohio Mar. 29, 2024) (finding plaintiff plausibly alleged knowledge requirement based on "facts specific to [p]laintiff's own sex trafficking, *in combination with* her allegations that [d]efendant was on notice about the prevalence of sex trafficking at its hotels" (emphasis added)); *Doe (T.D.B.) v. G6 Hospitality*, 23-cv-174, ECF No. 55 at 22 (E.D. Tex. Sept. 30, 2024) (explaining complaint presented a "Russian doll of knowledge" involving general knowledge of sex trafficking, knowledge of sex trafficking at the specific hotel, and "red flags" of plaintiff's trafficking). *G.M.* and *T.D.B.* involved "red flags" suggestive of coercion, including "audible signs of distress during conflict between [p]laintiff and her traffickers," and "visible signs of abuse." *G.M.*, 2024 WL 1347722, at *8; *T.D.B.*, 23-cv-174, ECF No. 55 at 22. As discussed, those allegations are not present here.

In sum, Plaintiff fails to plausibly allege Defendants knew of should have known they were participating in a venture engaged in TVPRA violations.

### 2. Participation in a Venture

"[C]ourts have recognized multiple ways to establish the 'participation in a venture' requirement" for TVPRA beneficiary liability. *S.A.S.*, 2024 WL 3276417, at *6. Some have found a plaintiff satisfies this requirement by pleading "facts from which a court could infer 'a common purpose, shared profits and risk, or control.'" *Id.* (quoting *Doe 1 v. Apple Inc.*, 96 F.4th 403, 416 (D.C. Cir. 2024)). Others have "accepted showings of a 'direct and continuous relationship that existed between the parties.'" *Id.* (quoting *Apple*, 96 F.4th at 416). "Where a defendant provides assistance, support, or facilitation to the trafficker through such a continuous business relationship, a court or jury may infer

that the participant and trafficker have a tacit agreement that is sufficient for participation under Section 1595." *Id.* (quoting *G.G.*, 76 F.4th at 559) (quotation marks omitted). "Notably, a participant defendant need not have committed some overt act that furthers the sex trafficking aspect of the venture or have associated with the sex trafficker for the purpose of furthering the sex trafficking." *Id.* (quoting *G.G.*, 76 F.4th at 559 n.15) (quotation marks omitted). However, "the standard hotel-guest relationship, standing alone, does not constitute participation in a trafficking venture." *R.T.*. 2025 WL 961531, at *3.

In *R.T.*, Judge Whitehead found the plaintiff sufficiently pleaded participation in a venture by alleging "facts showing [defendant] crossed the line from passive observer to active participant in several important ways." *Id.* First, the plaintiff alleged hotel staff "actively facilitated trafficking by accepting payments to serve as lookouts for police activity." *Id.* Second, the plaintiff alleged "the existence of a longstanding relationship where staff willfully ignored obvious signs of trafficking, including her visible injuries and a direct plea for help." *Id.* Third, the plaintiff alleged her trafficker and the hotel had "prior commercial dealings" that they "wished to reinstate for profit." *Id.* The court found these allegations extended "well beyond mere arm's-length transactions" and plausibly gave rise to TVPRA beneficiary liability. *Id.; see also Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726–27 (11th Cir. 2021) (affirming dismissal of TVPRA beneficiary claim because allegations suggested only that defendants "financially benefitted from renting hotel rooms to the [plaintiffs'] sex traffickers," and "observing something is not the same as participating in it.").

Here, Plaintiff alleges Defendants participated in two "ventures": (1) a sex trafficking venture with Plaintiff's trafficker; and (2) a franchise business venture

ORDER - 10

between the Franchisor Defendants and Franchisee Defendant. Dkt. # 1 ¶¶ 119–120. Neither is sufficiently alleged.

As to the sex trafficking venture, unlike in *R.T.*, Plaintiff fails to allege facts showing Defendants "crossed the line from passive observer to active participant." *R.T.*, 2025 WL 961531, at *3. Instead, Plaintiff alleges only conduct within the bounds of a traditional hotel-guest relationship, including renting hotel rooms, allowing guests to use their preferred form of payment (in this case cash), not entering rooms with "Do Not Disturb" signs, and providing fresh towels and sheets upon request. Dkt. # 1 ¶ 63. This on its own is insufficient to allege participation in a venture.

Citing *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019) and its progeny, Plaintiff argues it is sufficient to allege "defendants rented rooms to people it knew or should have known were engaged in sex trafficking." Dkt. # 24 at 12. But even applying this standard, Plaintiff's claim still fails because as discussed above, Plaintiff does not plausibly allege Defendants knew or should have known she was being trafficked.

As to the franchise business venture, this theory fails because TVPRA requires "participation in a venture that . . . has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a). Because Plaintiff does not plausibly allege either the Franchisor Defendants or Franchisee Defendant engaged in an act in violation of the TVPRA, it follows that a business venture between only Defendants cannot satisfy the participation in a venture requirement.

### B. Other Liability Theories

Although the complaint does not contain a cause of action for perpetrator liability against Franchisee Defendant, cause of action one includes an allegation that the Franchisee Defendant "violated 18 U.S.C. § 1591(a) as a perpetrator." Dkt. # 1 ¶ 120.

"Civil perpetrator liability under § 1595 adopts [§ 1591]'s elements for criminal liability." *S.A.S.*, 2024 WL 3276417, at *9. For the reasons discussed above, Plaintiff's allegations against the Franchisee Defendant do not rise to the level a civil violation of the TVPRA, much less a criminal violation.

Franchisor Defendants' motion to dismiss also points out that the complaint makes a single passing reference to 18 U.S.C. § 2255, which provides remedies for certain plaintiffs who were victimized as minors, and moves to dismiss to the extent Plaintiff is alleging a § 2255 claim. Dkt. # 21 at 27. Plaintiff's opposition does not address this argument. The Court interprets Plaintiff's lack of opposition as an admission that she is not alleging a § 2255 claim.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants Holiday Hospitality Franchising, LLC and Six Continents Hotels, Inc.'s motion to dismiss, dkt. # 21 and **DISMISSES** the complaint **WITHOUT PREJUDICE** and with leave to amend within 21 days of the entry of this order.

Dated this 12th day of September, 2025.

The Honorable Richard A. Jones
United States District Judge

ORDER - 12